## SERGEANT *v.* INGERSOLL.

On the 9th October, 1818, R. being the owner of land subject to a ground-rent, conveyed to I. free from the rent, which R. covenanted to extinguish within the period allowed by the original deed, or any period to which the right of redemption might be extended. On the 31st of October, R. purchased the rent, but took a conveyance to J. S. I. then sold part of the land, reciting in his deed that it was purchased from R. clear of encumbrances; and on his deed was endorsed a release from the rent, by J. S., of the portion thus sold, reserving his rights out of the residue. After the execution of the deed by I. and the release endorsed thereon, but before either was recorded, J. S., conveyed the rent to E. S. for valuable consideration. In this deed was recited the endorsement of the release endorsed upon the deed of J. *Held*, there is no constructive notice by these deeds to affect E. S.

But if E. S. purchased from R., she was bound to inquire of R. and J. S. why the title was in the name of J. S.; and as she would then have learned the equitable ownership of the rent by R., and his covenant with I., she cannot enforce payment of the rent after the ultimate period has elapsed for the extinguishment of the rent by R. under his covenant with J.

*Jan.* 31—*Feb.* 1, 2. This was an action of covenant on an apportioned ground-rent by Mrs. Elizabeth Sergeant, the assignee of the

rent, against Ingersoll, the tenant of the land. On the trial before BURNSIDE, J., it appeared that in 1811 O'Connor and wife conveyed to McIlwhame, in fee, a large lot of ground in Philadelphia, reserving a ground-rent of $351 to the grantors in fee, redeemable within ten years on the payment of $5850. In 1814, McIlwhame's title to the land was conveyed to Reed, subject to the ground-rent. On the 9th of October, 1818, Reed conveyed to Ingersoll, the defendant, "free and discharged from the aforesaid rent-charge, liens, and encumbrances whatsoever," and with a further covenant by Reed that he would extinguish the said ground-rent of $351 within the time limited to extinguish the same, or within any extended time for extinguishing the same, and in the mean time indemnify and save harmless the said Ingersoll, his heirs, &c., from any charges, claims, or demands whatsoever thereof. The consideration of this conveyance was $11,250, which included the par value of the rent.

On the 31st of October, 1818, O'Connor's heirs conveyed the ground-rent of $351 to John Sergeant; and on the 6th of February, 1819, Sergeant by deed endorsed on the original ground-rent deed, covenanted to extend the period for redemption for ten years from that date.

On the 30th of April, 1819, Ingersoll conveyed to Smith a piece of land, reciting it to be part of the lot conveyed by Reed to Ingersoll, clear of all liens and encumbrances. This deed was not recorded until the 21st of June, 1820. On the 1st May, 1819, John Sergeant, by deed endorsed on the last-mentioned one, and recorded with it, reciting that a larger lot, of which that conveyed to Smith was part, was subject to the ground-rent of $351 now vested in said John Sergeant, released the portion conveyed to Smith from the rent, provided that nothing should impair his right to recover the rent from the residue of the land.

On the 3d May, 1819, John Sergeant, by deed reciting the creation of the rent, and his release of part of the land endorsed upon the deed from Ingersoll to Smith, and that the time for redeeming the rent had been extended, in consideration of $5265, conveyed the rent to Elizabeth Sergeant, the plaintiff.

The defendant proved the rent had been purchased and paid for by Reed through John Sergeant; that Sergeant and Reed had married sisters, and that Reed had paid the rent until 1829.

John Sergeant was the step-son of the plaintiff; and, on his examination, stated he was not the agent of the plaintiff in purchasing the rent, and never knew of it until called upon to sign the deed, nor did he know whether she employed a scrivener; that he re-

ceived from Reed a paper to show that he (J. S.) had received none of the money, and had no interest in the matter. His understanding of the object of the arrangement with Ingersoll, was to give Reed the use of the money. "My position was that of a friendly trustee without interest: not even a trustee—merely to execute the papers."

. It was also in proof that Smith and Ingersoll purchased the lot together; and that on the winding up of the concern there was a balance due by Smith, which was deposited to Mr. Sergeant's credit in bank, and by him paid to Reed.

The plaintiff also gave in evidence a statement of the amount of the purchase between Reed and Ingersoll, signed by the former, in which it was stated that "Ingersoll having paid to Reed the principal of the ground-rent, viz. $5850, in account settled this day, Reed agrees to extinguish the ground-rent within the time limited by the deed if the same is not extended, October 9, 1818."

His honour instructed the jury that there was not upon the face of the deeds notice to Mrs. Sergeant of Ingersoll's interest, nor sufficient to put her on inquiry; and that there was not sufficient evidence to warrant the jury in finding that Mrs. Sergeant had notice, or notice enough to put her on inquiry.

These were the only points passed upon by this court.

*C. Ingersoll*, for defendant below.—Reed conveyed the land, and so far as he could do so the rent. A few days afterwards he purchased the rent through his trustee : these are facts undisputed. The former case of Ingersoll *v.* Sergeant was argued upon the assumption there was no notice, the rent being then considered a rent-charge, and released by the release of part. It is now alleged Mrs. Sergeant had knowledge or notice ; if she had either of these as to Reed's covenant and ownership, she is bound by it. The release by J. Sergeant to Smith was endorsed upon the deed from Ingersoll to Smith, which recited the fact of a purchase from Reed discharged of the rent. That release was in her title; for without it she knew not what land remained liable to her rent, and she is affected by whatever was contained in the deed: 2 Sug. Vend. 293; 2 Powell, Mortg. 575 a. The want of registry is immaterial; for she had direct notice of its existence, and was bound to examine,— and, doing so, she would have found the recital of discharge affirmed by her grantor a few days before the conveyance to her. The answer is, she saw a personal covenant merely, and that by a stranger; but, certainly, under such circumstances, she was bound

to inquire of the tenant in possession, and of the person from whom she was purchasing: 2 Powell, 564. What more could the tenant do than give the notice by registry that he claimed to hold clear of the rent, and await applications for information: Jaques v. Weeks, 7 Watts, 267; Brush v. Ware, 15 Peters, 112; Pow. by Rand and Coventry, 574, n. v; 1 Story, Eq. s. 400. The rule is there established that ordinary diligence is the first duty of a purchaser, until he meets with a defect, and then he is put to extreme caution and laborious diligence, as to which every case depends on its own circumstances. In Lewis v. Bradford, 10 Watts, 72, an agent on the land said to the purchaser, "Be sure you get a good title;" and that was held to put him on inquiry. In Billington v. Welsh, 5 Binn. 132, the purchaser was presumed to know of judgments, because they were held by his brother-in-law. In Clark v. Jenkins, 5 Pick. 280, a trial was directed whether the demandant was a man of more than ordinary acuteness. In Barnes v. McClinton, 3 Penna. Rep. 67, a general notice that there was a claim, and the purchaser would buy a law-suit, was held sufficient, an attorney being present to answer questions. But there was evidence of actual knowledge in this case: Ingersoll, Reed, Smith, and John Sergeant, had actual knowledge; the receipt of the rent from Reed, and the fact that she purchased from him, which must have been the case since she did not purchase from John Sergeant, and the relationship of the parties, show she had knowledge. This alone was sufficient to put her on the inquiry of Sergeant as to his title: 2 Freem. 137, pl. 171; Lodge v. Simonton, 2 Penna. Rep. 443; Hiern v. Mill, 13 Ves. 114, 122.

*F. W. Hubbell* and *Scott*, contrà.—The whole question as to notice from these deeds has been virtually decided in Ingersoll v. Sergeant. They were all in evidence, and the court decided Mrs. Sergeant was entitled to recover. But of what had she notice? A mere personal covenant by Reed to extinguish at a future time, while the deeds showed he had not acquired the capacity to perform his covenant. The contract was clearly an agreement to advance Reed the price of the rent, for which he covenanted to extinguish it at some future time. This time for performance or extension of the credit was the essential part of the contract. To deprive him of the power of dealing with the rent as his own in the mean time, is to take all effect from the contract; since he was bound by his contract with Ingersoll to keep down the accruing rent. It was in all respects similar to a drawer of a note due a year hence, who

cannot have notes of the drawee maturing during the year and purchased by him, set off; for until the end of the year he is not a debtor. So here, until the end of the extended period for extinguishment, Reed's covenant with Ingersoll was not broken. The possibility of merger is prevented by industriously taking the legal title in the name of a stranger. And the doctrine of this court, as settled in Helmbold v. Man, 4 Whart. 410, and Penington v. Coates, 6 Whart. 277, is, that the union of the two legal estates would not produce merger if the intent were otherwise. Here it is sought to work a merger, while neither legal nor equitable estates were united. [Gibson, C. J.—Could Reed have distrained for the rent while equitable owner, and can the purchaser succeed to a better right?] Equitable set-off might exist in such case; but it could not be extended to deprive him of his contract, which was essentially the right to deal with the rent in the mean time. The opposite construction leads to the absurdity that Mrs. Sergeant *bought* absolutely nothing, but went through the form of purchasing a ground-rent payable by Ingersoll, to effect a loan to Reed, of which loan there is no pretence of evidence.

The effect of relationship, as presuming notice, cannot be weighed. In Billington v. Welsh, it was merely held that there being relationship, the possession did not necessarily imply adverse claim. Lightner v. Mooney, 10 Watts, 412, determines that a purchaser is not bound to examine the registry out of his own claim of title. But it really seems that this part of the case is stronger against the defendant. If the rent was extinguished, for what purpose was the release required by Smith? That was upon his deed from Ingersoll; and the consideration was the balance of account due by Smith to Ingersoll, who therefore must have known of it. This was, then, an affirmation of the existence of the rent, of which Ingersoll did not complain.

*J. R. Ingersoll*, in reply.—A purchaser is bound to examine the title of the tenant to see if at any time there was a merger and extinguishment. There was upon this title a clear assertion of extinguishment of the rent by Reed; and the fact was that he did extinguish it, for so soon as he received the price he paid off the rent. From that time it ceased to exist, and Mrs. Sergeant purchased an annuity from Mr. Reed. The land was discharged from all liability, and the only security she obtained was the personal liability of her vendor.

*March* 7.    Gibson, C. J.—The direction that there was no evi-

dence of notice to Mrs. Sergeant of the actual state of the title was carried too far. There was, indeed, no constructive notice from the face of the deeds, but the purchase was made by her either directly or through the intervention of a broker, and she is equally to be affected in either case if she is to be affected at all; for notice to an agent is notice to his principal. Mr. John Sergeant, in whom the legal title to the ground-rent was vested by conveyance from Mr. Reed's vendors, testified that he was not Mrs. Sergeant's agent for the purchase of the beneficial interest from Mr. Reed; that the conveyance of the legal title to her was brought to his office and executed; that he had given no order to have it prepared; and that his "position was that of a friendly trustee—not even that—merely to execute papers." From this it is clear he knew nothing and did nothing in relation to the transaction, except to execute the conveyance to her and sign a check in favour of Mr. Reed for the purchase-money which had been paid into bank to Mr. Sergeant's credit. He was no more than a conduit-pipe of the legal title, and bound to give it any direction that Mr. Reed might dictate. If Mrs. Sergeant did not purchase from Mr. Sergeant—and his testimony is that she did not—the inference to be drawn by a jury is irresistible that she purchased from Mr. Reed, and she would be affected by any thing that would put a keen-nosed purchaser on the scent of a flaw in his title. Then, what did she purchase from him? He could sell his equitable ownership only, for the legal title was outstanding in a trustee; and the rudimental principle of equity that he who purchases an imperfect or inchoate title must stand or fall by the case of his vendor, has never been shaken. Mr. Reed may have undertaken, not to convey the legal title to himself, but to procure it to be conveyed to her; and hence it is said, that when she actually received a conveyance of it, she became a *bonâ fide* purchaser of it. Had she purchased it of Mr. Sergeant, she would have undoubtedly been so; but the fact that she was dealing with one who had it not, was a circumstance to arouse suspicion and prompt an inquiry. A purchaser without notice must appear to have acted, not only with good faith, but with extreme vigilance, for equity refuses to protect the careless and the slothful. In Hiren *v.* Mill, 13 Ves. 114, notice that the title *deeds* were in the *possession* of another, was held to be notice of an equitable claim by him on the estate; and in an anonymous case in 2 Freem. 137, pl. 171, the very point before us was decided. It was held that if the vendee knows at the time of the purchase that the *legal estate* is in another, he is bound to take notice of the

trust. Beyond this it is unnecessary to go, though cases could be produced in which the doctrine of vigilance was carried further. Now had Mrs. Sergeant demanded the reason why Mr. Reed had procured the conveyance to be made to Mr. Sergeant and not to himself, she would have been told that Mr. Reed himself had been, the ground-tenant; that he had sold the ground encumbered with this ground-rent to Mr. Ingersoll, and had received the whole pur-, chase-money on the foot of his covenant to remove the encumbrance within the time of redemption limited in the ground-rent, "or within an extended time," and to keep Mr. Ingersoll indemnified in the mean time; that he had bought it in to raise money on it by extending the time of redemption, while it should suit his conveni-ence, still keeping Mr. Ingersoll indemnified according to his cove-nant; and that he had procured the title to be vested in a friend, to prevent the ground-rent from being extinguished by a union in the same person of the hand to receive and the hand to pay. All this was fair in morals if it were not valid in law; and as it would have been communicated had she demanded explanation, we must take it that she had it, for if it were refused, it was her course to abandon the purchase.

It has been argued, however, that she had notice of nothing which constituted a defence. But it will not be said that Mr. Reed could have enforced this ground-rent against Mr. Ingersoll in the face. of his own covenant, and it is difficult to conceive how his alienee, with notice, can stand on higher ground. Admitting, for a moment, that Mrs. Sergeant might have enforced it circuitously against Mr. Reed by throwing Mr. Ingersoll on his covenant—and for no other reason could she have remedy against Mr. Ingersoll, if at all—yet could she enforce the payment of arrears which accrued when Mr. Ingersoll was not bound to rely on his covenant? It is certainly true that Mr. Reed was to have the use of the purchase-money during the time of redemption limited in the ground-rent deed, and during any further time accorded by agreement between Mr. Reed and his landlords; and that during the one and the other of these two periods, Mr. Ingersoll was to have no better security than Mr. Reed's personal covenant. But could Mr. Reed change the origi-nal terms which both he and Mr. Ingersoll undoubtedly had in view, and by getting the control of the ground-rent enable him-self by his agreement, not with his landlords, but with his own trustee, to keep it an existing encumbrance on Mr. Ingersoll's title during his lifetime? Mr. Ingersoll might be perfectly willing to hazard the prolongation of the time while it depended on the con-

currence of the ground-landlords, who had no motive to lend them-elves to Mr. Reed's convenience, but altogether unwilling to leave the matter to him alone. The words of a contract are to be applied to the circumstances attending it, as they stood at the time of the bargain, and not even to them in connection with a new element introduced into the case by one of the parties; and it is to be inter-preted according to what they apprehended to be the subject of the agreement with its incidents as they then existed. This principle is exemplified in the Schuylkill Navigation Company v. Moore, 2 Whart. 477, in which the grant of a right to draw water from a canal through an aperture of so many square inches, was held not to give a right to increase the flow by the application of a conical tube called an adjutage. What, then, was the legal effect of Mr. Reed's purchase on the terms of the contract? It became impossi-ble for Mr. Ingersoll to allow him the benefit of an extension by the ground-landlords, for they had ceased to be such; and the pos-sibility of an extension beyond the ten years became impracticable and exploded. In effect, Mr. Reed himself abandoned it. When a covenantee has done an act to obstruct performance in his favour, the covenant shall be taken against him, to have been actually per-formed. This is a familiar principle. At the time of Mr. Reed's conveyance to Mr. Ingersoll, the period of redemption in the deed had three years to run, during which he paid the arrears; but when the ten years were expired he became bound to extinguish the ground-rent altogether. In contemplation of law, Mrs. Sergeant was advised of this; and, standing in his place as his alienee with notice, she became bound not to press it, not because his covenant to do so ran with the ground-rent, but because the provision in the deed to Mr. Ingersoll was obsolete and gone, both as to Mr. Reed and herself, the occupant of his place. The time when Mr. Ingersoll was bound to trust to Mr. Reed's personal responsibility had gone by, and she could no longer compel him to do so. Purchas-ing with notice of every necessary fact, she succeeded, not only to Mr. Reed's rights, but his obligations; and her personal representative is consequently not entitled to recover the arrears of a quit-rent which he was bound to extinguish. It is an ungrateful task to cast a loss on one of two innocent parties which has been occasioned by the misfortunes of another equally innocent; but we have no other course than to dispense justice to them according to their legal advantages.

Judgment reversed, and a *venire de novo* awarded.